**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| STEPHANIE L. HOUSER, | ) | |
| | ) | |
| | ) | Case No.    3:23-CV-259 |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOUIS DEJOY, POSTMASTER | ) | |
| GENERAL, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendant*. | ) | |
| | ) | |
| | ) | |

## COMPLAINT IN CIVIL ACTION

AND NOW comes Plaintiff, Stephanie Houser (hereinafter, "Plaintiff" and/or "Ms. Houser"), by and through the undersigned counsel, who files the within Complaint in Civil Action against Defendant, Louis Dejoy, Postmaster General, averring as follows:

## PARTIES

1.      Plaintiff is an adult individual who resides at 339 Allport Cutoff, Morrisdale, Pennsylvania 16858.

2.      Defendant, Louis DeJoy is the Postmaster General of the United States Postal Service (hereinafter, "Defendant"), which is an independent agency of the executive branch of the United States government with local business operations located at 222 East Laurel Street, Philipsburg, Pennsylvania 16866 (hereinafter, the "Facility").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to the federal question presented pursuant to 28 U.S.C. § 1331 as Plaintiff brings this lawsuit asserting that Defendant violated her

rights under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* (hereinafter, the "ADEA") and the Rehabilitation Act of 1973, Pub. 29 U.S.C. § 701, *et seq.* (hereinafter, the "Rehab Act").

4.      Venue is also proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to the claims asserted herein occurred in the town of Philipsburg, Pennsylvania, Centre County, which is within the geographic confines of the United States District Court for the Middle District of Pennsylvania.

## PROCEDURAL HISTORY

5.      With respect to the ADEA and Rehab Act claims, Plaintiff has satisfied all procedural and administrative requirements set forth in 29 U.S.C. § 626, and 42 U.S.C. § 2000e-5 in that:

    a.  On December 28, 2021, Plaintiff filed a timely administrative complaint with the Equal Employment Opportunity Commission (hereinafter, the "EEOC") alleging, among other things, that Defendant failed to provide her with a reasonable accommodation, retaliated against her for requesting a reasonable accommodation, and discharged her for exercising his statutory rights, all in violation of the Rehab Act and the ADEA;

    b.  On July 26, 2023, Plaintiff received a Notice of Final Action, wherein Plaintiff was afforded 90 days within which to timely file a civil action in an appropriate U.S. District Court. With the filing of the instant Complaint, Plaintiff has further satisfied any procedural requirements.

## FACTUAL ALLEGATIONS

6.      Plaintiff is an adult female, over the age of 55.

7.      Prior to 2000, Plaintiff was diagnosed with the following:

    a.   Scleroderma Disease:  A chronic autoimmune disorder that substantially affects the consistency of Plaintiff's skin and is the root cause of other diseases;

    b.   Interstitial Lung Disease: A disorder that inflames and scars the lungs;

    c.   Gastroparesis Disease: A chronic condition that substantially affects the normal spontaneous movement of Plaintiff's stomach muscles and digestion;

    d.   Major Depressive Disorder (Diagnosed in 2015): A chronic condition that substantially impairs Plaintiff's mood, concentration and energy;

    e.   Asthma (Diagnosed in 2017): A chronic lung disorder characterized by narrowing of the airways, that substantially impairs Plaintiff's breathing;

    f.   Raynaud's Disease: A chronic condition that causes areas of Plaintiff's body to feel numb and cold in response to stress;

    g.   Gastroesophageal Reflux Disease (Diagnosed in 2018): A chronic condition that causes Plaintiff pain when stomach acid flows back into the tube connecting her mouth and esophagus;

    h.   Non-Allergic Rhinitis (2019): A chronic condition that causes Plaintiff's nose to become inflamed or swollen causing sneezing, and a stuffy, runny and itchy nose.

8.      The diagnoses delineated in Paragraph 7 shall hereinafter collectively be referred to as Plaintiff's "Disabilities."

3

9.      Plaintiff's Disabilities, individually and/or collectively, substantially impair one or more of Plaintiff's major life activities such as concentrating, focusing, breathing, sleeping and digestion.

10.     In July of 2000, Plaintiff commenced her employment with Defendant as a "Clerk."

11.     At all times pertinent hereto, Plaintiff held the position of "Lead Sales & Services Associate" with Defendant.

12.     In Plaintiff's role as "Lead Sales & Services Associate," Plaintiff's job duties primarily required her to perform a variety of sales and customer support services – with or without – direct supervision.

13.     At all times pertinent hereto, Plaintiff worked primarily by herself at a station and interacted with the public from behind a Plexiglass wall.

14.     Plaintiff's annual rate of pay was Sixty-Seven Thousand Dollars ($67,000.00). However, in practice, Defendant compensated Plaintiff at an hourly rate of Thirty-Two Dollars and Forty-Two Cents ($42.42) per hour worked.

15.     At all times pertinent hereto, Defendant was advised of and, therefore, aware of Plaintiff's Disabilities.

16.     Throughout the course of Plaintiff's twenty-one-year tenure with Defendant, Plaintiff received numerous exemplary performance reviews for her workplace efforts and work ethic and never received a negative performance review.

17.     On or about March of 2020, during the height of the COVID-19 virus pandemic, Defendant enacted a policy wherein employees were mandated to wear facial coverings during all times present and working in the Facility (hereinafter, the "Policy").

4

18.     Subsequent to the event set forth above, Plaintiff, in compliance therewith, began wearing a facial covering when she was present and working at the Facility.  However, Plaintiff began to experience an inability to breathe, which incrementally deteriorated on a daily basis.

19.      Due to the above-referenced physical manifestation, Plaintiff sought medical treatment from her treating physician, Robert A. Mentyka, M.D. (hereinafter, "Dr. Mentyka"), who diagnosed Plaintiff with an exacerbation of her Non-Allergic Rhinitis and Asthma conditions as a direct result of wearing a facial covering while present and working at the facility.

20.     As a result of the exacerbation of Plaintiff's Disabilities noted above, Dr. Mentyka issued a medical note (hereinafter, the "Note") to Defendant on Plaintiff's behalf excusing Plaintiff from wearing a facial covering while working at the Facility due to the exacerbation of her symptoms related to her Disabilities.

21.     Plaintiff's Supervisor at this time was Carmel Dunlap (hereinafter, "Ms. Dunlap").

22.     Upon Plaintiff's provision of the Note to Ms. Dunlap (hereinafter, the "Request for Accommodation"), Ms. Dunlap told Plaintiff that the Note was sufficient to render Plaintiff exempt from the Policy, thereby agreeing to the Request for Accommodation.

23.     On or about September of 2021, upon Ms. Dunlap's retirement from Defendant's employ, Joe Vigilante (hereinafter, "Mr. Vigilante") assumed Ms. Dunlap's role as Plaintiff's Supervisor.

24.     Subsequent to the above-referenced event, Mr. Vigilante informed Plaintiff that he would henceforth be enforcing the Policy and revoking her accommodation.  Therefore, Plaintiff was again expected to wear a facial covering at all times she was present and working at the Facility.  Responsively, Plaintiff invoked the previously agreed upon Request for Accommodation.

25.    Mr. Vigilante's response to Plaintiff's invocation of the Request for Accommodation was to verbally harass Plaintiff with provocative inquires, stating "If you're not going to show up, tell me now," to which Plaintiff responded that she would of show up to work.

26.    In a good faith effort to comply with Mr. Vigilante's directives set forth above, Plaintiff resumed attempts to wear a facial covering while present and working at the Facility. However, once again, that action exacerbated the symptoms relating to Plaintiff's Disabilities. Therefore, Plaintiff, in order to preserve her health and wellbeing, ceased wearing the facial covering while present and working at the Facility.

27.    Of salience, Plaintiff, while at her workstation, was at all times separated from her customers by a plexiglass window.

28.    Notably, during this period of time, Mr. Vigilante did not harass Plaintiff's coworkers, who were both under the age of forty (40) and without a disability, when they failed to wear their facial coverings or wore their coverings around their neck instead of over their mouth. Accordingly, Plaintiff objected to Mr. Vigilante's inequitable enforcement of the Policy.

29.    On or about September 10, 2021, Plaintiff notified Mr. Vigilante that she would be contacting the United States Postal Inspection Service over workplace practices she witnessed that were in direct violation of Defendant's policies, i.e. coworkers scanning items after 4:00 p.m. (thereby denoting them as available for pick-up) that were not present in the Facility in order to give the "appearance" that no scans were missed by Defendant's carriers.

30.    On or about September 13, 2021, Mr. Vigilante harassed Plaintiff about her not wearing a facial covering.  Mr. Vigilante asked her to simply wear a face covering around her neck to give the appearance of compliance with the Policy.  Once again, Plaintiff invoked the previously agreed upon Request for Accommodation instead of merely giving the appearance of compliance.

31.     In response thereto, Mr. Vigilante verbally harassed Plaintiff and told her that if she were not going to wear a facial covering, he was going to send her home until such time as the Policy was lifted or Plaintiff could wear a facial covering.

32.     In response to the threat of being sent home, Plaintiff initiated a charge of age and disability discrimination with the United States Postal Service on September 13, 2021. The USPS forwarded the charge to the EEOC.

33.     Approximately one week later, on September 30, 2021, Mr. Vigilante retaliated against Plaintiff for her complaint by serving Plaintiff with a seven (7) day suspension from work, without pay, beginning on October 23, 2021, and expiring on October 29, 2021 (hereinafter, the "Suspension").

34.     Plaintiff was a member of the American Postal Workers Union, located locally in Harrisburg, Pennsylvania (hereinafter, "APWU"), and immediately after receiving her Suspension, advised her Union President, Kim Miller (hereinafter, "Ms. Miller") of the events that had transpired.  The APWU filed a grievance against Defendant with regard to the Suspension.

35.     Ultimately, Plaintiff's Union Representative, Ms. Miller, negotiated a settlement of the above-referenced grievance wherein the disciplinary action levied by Defendant against Plaintiff was reduced to a letter of warning only.

36.     On or about September 20, 2021, Plaintiff submitted a written request to Defendant for a Reasonable Accommodation, (hereinafter, "Second Request for Accommodation") citing her Disabilities and providing supporting medical documentation for same.

37.      In response to the event delineated above, Defendant's District Reasonable Accommodation Committee (hereinafter, the "DRAC") authored correspondence to Plaintiff,

dated December 7, 2021, alerting Plaintiff of a meeting to be held regarding Plaintiff's matter on December 21, 2021, and seeking Plaintiff's attendance at same.

38.    A virtual meeting was held with Plaintiff and DRAC where Plaintiff offered ways she could be accommodated at the Facility.    The DRAC did not explore any alternative accommodation other than an unpaid leave.

39.    On or about December 23, 2021, Christina Headley (hereinafter, "Ms. Headley"), Defendant's Occupational Health Nurse Administrator, authored correspondence to Plaintiff requesting additional documentation and information from Plaintiff's treating physician, Dr. Mentyka, who responded to Ms. Headley's request.

40.    On or about January 18, 2022, Defendant's DRAC authored correspondence to Plaintiff concluding that Defendant is unable to accommodate Plaintiff (hereinafter, the "Denial"), and authorized Plaintiff to take an unpaid leave of absence until March 30, 2022.

41.    On or about January 24, 2022, Plaintiff submitted an appeal to the above-delineated decision by Defendant's DRAC, primarily based on the fact Plaintiff performs her duties behind a plexiglass window and the Policy was not equitably enforced by Mr. Vigilante.

42.    On or about February 3, 2022, Lori Price, Defendant's Human Resources Manager, authored correspondence which denied her Second Accommodation Request and did not offer an alternative reasonable accommodation.

43.    As a direct result of Defendant's actions delineated above, Plaintiff was forced to take a leave of absence, without pay, from January 19, 2021 through March 29, 2022.

44.    On or about March 29, 2022, as Defendant's Policy was no longer in effect, Plaintiff returned to work at Defendant's Facility.

45.    In further retaliation for Plaintiff's protected activity, Mr. Vigilante, on April 1, 2022, summoned Plaintiff to his office and verbally reprimanded her relating to an "anonymous complaint" he claimed to receive and alleged that Plaintiff needed to be removed from her position due to allegedly poor customer service.

46.    Plaintiff believes and avers that the anonymous complaint was disingenuous and merely an attempt by Mr. Vigilante to continue his harassment of  Plaintiff and retaliate against her for her prior protected activity.

47.    Notably, on or about April 2, 2022, Plaintiff discovered a sign at her workstation that read, "Certificate of Upgrade to Complete Asshole."  Plaintiff promptly reported the sign to Ms. Miller.  Plaintiff also reported the sign to Mr. Vigilante who admitted seeing the sign for two (2) months but did not remove it.  The sign was thereafter seized by coworker, Danielle Fleck (hereinafter, "Ms. Fleck"), who provided it to representative, Calvin Hanes, (hereinafter, "Mr. Hanes").

48.    Despite Mr. Vigilante raising an anonymous complaint and willfully failing to remove a harassing sign from Plaintiff's workspace, Plaintiff continues to work at the Facility today in the Lead Sales & Services Associate position.  Mr. Vigilante has since been relocated to the post office in Curwensville, Pennsylvania.

49.    Ultimately, the Note confirms that Plaintiff possessed a legitimate factual and medicinal basis for seeking an accommodation from the Policy and Defendant abruptly, blanketly, and arbitrarily denied Plaintiff's request to invoke a medical exemption without exploring alternative reasonable accommodations.

**COUNT I**
**DISABILITY DISCRIMINATION IN VIOLATION**
**OF THE REHABILITATION ACT OF 1973**
**29 U.S.C. § 701,** *et seq.*

50.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

51.     "The Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, is applicable only to federal employers and employers who receive federal funding."  *Shiring vs. Runyon*, 90 F.3d 827, 830 (3d Cir. 1996).

52.     Under the Rehab Act, "no otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794.

53.     "In order for an employee to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job."  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) citing *Shiring vs. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).

54.     A "disability" is defined as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment."  *Wishin vs. Potter*, 476 F.3d 180, 185 (3d Cir. 2007).

55.     Plaintiff has a record of mental and physical impairments that substantially limit Plaintiff's major life activities such as concentrating, sleeping, eating and breathing.

56.     At all times relevant hereto, Plaintiff was a qualified employee with over 20 years of experience with the USPS who could perform the essential functions of her job, serving the public from behind a plexiglass window, with or without reasonable accommodation.

57.     Plaintiff, working without a facial covering primarily in isolation and being separated from the public by a plexiglass window, presented no undue hardship to Defendant.

58.     Due to symptoms exacerbated in regard to Plaintiff's Disabilities, Plaintiff initiated a Request for Accommodation relative to the Policy in the form of being excluded from wearing a facial covering.

59.     Defendant approved Plaintiff's Request for Accommodation.

60.     In lieu of Defendant's approval of Plaintiff's Request for Accommodation, Defendant subsequently revoked its approval and suspended Plaintiff's employment, without pay, preventing her from performing her job.

61.     Defendant revoked Plaintiff's previously agreed to Request for Accommodation without engaging in a genuine and meaningful interactive process that could have explored the possibility of finding alternative reasonable accommodations which would have permitted Plaintiff to remain gainfully employed while presenting no undue hardship upon Defendant.

62.     As such, Defendant breached its duty to accommodate Plaintiff.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.


**COUNT II**
**HOSTILE WORK ENVIRONMENT IN VIOLATION**
**OF THE REHABILITATION ACT OF 1973**
**29 U.S.C. § 701,** *et seq.*

63.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

64.     In order to state a claim for hostile work environment under the Rehabilitation Act, "a plaintiff must provide five elements: (1) the plaintiff suffered intentional discrimination because of his disability, gender or age; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and (5) the existence of *respondeat superior* liability." *Boandle vs. Geithner*, 725 F.Supp.2nd 540, 571 (E.D.Pa, 2010).

65.     Plaintiff suffered regular and pervasive harassment from Mr. Vigilante about her Disabilities and inability to wear a facial covering, and her pursuit of a reasonable accommodation.

66.     Plaintiff suffered pervasive and frequent discrimination at the hands of Mr. Vigilante that altered the terms and conditions of Plaintiff's work environment and would have a detrimental impact on a reasonable person.

67.     Due to the hostile work environment, Plaintiff experienced a constant state of emotional duress and stress which manifest in headaches, sleep deprivation, stomach aches, undue stress, anxiety and depression.

68.     As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience of prudent persons.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**RETALIATION IN VIOLATION OF**
**THE REHABILITATION ACT OF 1973**
**29 U.S.C. § 701,** *et seq.*

69.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

70.     The Rehabilitation Act utilizes the same framework to establish a prima facie case of retaliation as the American with Disabilities Act. *Boandl vs. Geithner,* 752 F.Supp.2d 540, 561 (E.D. Pa. 2010) citing *Venter vs. Potter*, 694 F.Supp.2d 412, 427 (W.D. Pa., 2010).

71.     Therefore, Plaintiff must show (1) a protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Boadl* at 561.

72.     On or about March of 2020, Plaintiff invoked the Request for Accommodation.

73.     On or about September 13, 2021, Plaintiff filed a formal complaint of age and disability discrimination with Defendant that focused on the actions of Mr. Vigilante and was forwarded to the EEOC.

74.     One (1) week later, on or about September 30, 2021, Mr. Vigilante placed Plaintiff on a Suspension.

75.     On March 29, 2022, Plaintiff returned to work at the Facility after being on unpaid leave.  Immediately upon returning to work, Mr. Vigilante verbally reprimanded her about an anonymous complaint.  Plaintiff believes and avers the complaint was illegitimate, being further harassment perpetuated by Mr. Vigilante, that further threatened her employment.

76.     On or about April 2, 2022, Plaintiff discovered a harassing sign at her workstation. Mr. Vigilante admitted to Plaintiff that he saw the sign and did not remove it.  Plaintiff believes and avers that, at a minimum, Mr. Vigilante intentionally left the sign at her workstation to further harass her.

77.     Given the temporal proximity of Plaintiff's protected activity and the clear adverse actions delineated above, a sufficient causal connection exists between the two.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT IV**
**AGE DISCRIMINATION IN VIOLATION OF THE ADEA**
**29  U.S.C. §§ 621,** *et seq.*

78.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

79.     To establish a *prima facie* case of age discrimination under the ADEA and/or the PHRA, *see Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013), a plaintiff must show that she was (1) over the age of 40, (2) subject to an adverse employment action, (3) qualified for her position, and (4) suffered adverse employment action was because of her disability of her age. *Fowler v. AT&T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021).

80.     At all times relevant herein, Plaintiff was over the age of forty (40).

81.     Plaintiff regularly suffered intentional discrimination and significantly disparate treatment due to her age.

82.     Speifically, Mr. Vigilante treated Plaintiff less favorably than her similarly situated coworkers at the Facility, who were both under the age of forty (40) and without a disclosed disability, by allowing them to continue to work without a face covering.

83.     The discrimination which Plaintiff suffered at the hands of Mr. Vigilante was sufficiently pervasive and frequent to detrimentally affect Plaintiff, Plaintiff's work environment, and that of a reasonable person in the same position.

14

84.     Due to the hostile work environment, Plaintiff experienced a constant state of emotional duress and stress which manifest in headaches, sleep deprivation, stomach aches, undue stress, anxiety and depression.

85.     As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience of prudent persons.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Stephanie Houser, respectfully requests this Honorable Court to enter judgment in her favor and against Defendant, the United States Postal Service, and award all damages available at law and equity, as follows:

1.      Declare and find that Defendant committed one or more of the following acts:

   i.     Violated the Rehabilitation Act in discriminating against her on the basis of her Disabilities;

   ii.    Violated the Rehabilitation Act in creating a hostile work environment for submission and enacting of the Request for Accommodation; and

   iii.   Violated the Rehabilitation Act in retaliating against her for submission and enacting of the Request for Accommodation;

   iv.    Violated the ADEA by treating Plaintiff less favorably than her similarly situated coworkers with regard to the Policy.

2.      Award compensatory damages, including but not limited to past and future

pecuniary and non-pecuniary losses, suffering, mental anguish, inconvenience, and loss of

enjoyment of life;

3.      Award equitable relief in form of back pay and front pay;

4.      Award punitive damages sufficient to deter Defendant from engaging in future

conduct of a similar nature;

5.      Award attorney's fees; and/or

6.      Award pre-judgment and continuing interest as calculated by the Court.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: October 18, 2023                  By: */s/ Erik M. Yurkovich*
                                             Kyle H. Steenland (Pa. I.D. No. 327786)
                                             Erik M. Yurkovich (Pa. I.D. No. 83432)

                                             The Workers' Rights Law Group, LLP
                                             Foster Plaza 10
                                             680 Andersen Drive, Suite 230
                                             Pittsburgh, PA 15220
                                             Telephone: 412.910.9592
                                             Fax: 412.910.7510
                                             kyle@workersrightslawgroup.com
                                             erik@workersrightslawgroup.com

                                             *Counsel for Plaintiff, Stephanie Houser*

## **VERIFICATION**

I, Stephanie Houser, have read the foregoing allegations in the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief.  I understand that this verification is made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: 10 / 11 / 2023

*Stephanie L Houser*
_____
Plaintiff, Stephanie Houser

1

Doc ID: 3240f16b3a867824ad6582bf2106044c9d3f625f